[Civ. No. 13293.   Second Dist., Div. Two.   Oct. 22, 1941.]

RICHARD HUNT SAMPSON, as Executor, etc., Respondent, v. EMIL A. BRUDER et al., Appellants.

432

Lewis D. Collings and Jerrell Babb for Appellants.

Lasher B. Gallagher for Respondent.

SCOTT (R. H.), J. *pro tem.*—From a judgment for plaintiff in an action to compel a reconveyance of certain real property and for an accounting defendants appeal.

Plaintiff is executor of and trustee under the will of Laura Shellabarger Hunt, who died October 22, 1936, at the age of about 89 years. (See *Estate of Hunt*, 33 Cal. App. (2d) 358 [91 Pac. (2d) 609].) Mrs. Hunt met defendant Bruder in 1918 and her relationship with him became increasingly close during the succeeding years. In November of 1933 a grant deed was executed by Mrs. Hunt to Bruder covering the real property here in dispute—a two-story building in Culver City with eight or nine stores on the ground floor and sixteen apartments on the second floor. A month later she executed and delivered to Bruder a bill of sale for the furniture and fixtures in the building. On February 16, 1935, Bruder executed a deed for the property to defendant Coulter. Mrs. Hunt died on October 22, 1936. This suit was filed June 24, 1937, to recover the property and for an accounting on the ground that defendant Bruder's title was that of a constructive trustee and that defendant Coulter was charged with knowledge thereof. Judgment was rendered for plaintiff requiring a reconveyance of the property, and defendants were also required to make an accounting of receipts and expenditures in connection with the property, following which a money judgment for the balance due was given against each defendant.

On appeal defendants assert that the pleadings are defective and that the evidence is insufficient. They also point to a determination of the probate court in February, 1935, that Mrs. Hunt was at that time not incompetent, and claim that because of that proceeding plaintiff is estopped and the matter is *res adjudicata*. Defendant Coulter separately defends her title, claiming to be an innocent third person purchasing the property for a valuable consideration.

The trial court found that Mrs. Hunt sustained injuries about June 4, 1932, which confined her to bed or wheelchair, and that she continued up to the time of her death in a physically weakened and infirm condition; that defendant Bruder had been and on November 20, 1933, was an intimate, trusted and confidential adviser, and that by reason of that "confidential and fiduciary relationship" Mrs. Hunt, as grantor, executed a deed to the property in question, worth $35,000, to him as grantee, without sufficient consideration and under undue influence by him; that defendant Bruder

assisted Mrs. Hunt in writing checks, had access to her safety deposit box, knew her business transactions and visited her nearly every day, and that at the time the deed was executed Mrs. Hunt had no independent advice; that defendant Bruder held legal title to the property but that he took it as trustee for Mrs. Hunt, and that defendant Coulter knew of this and took title in violation of that trust and held such title as involuntary trustee for Mrs. Hunt. Evidence which is impressive and convincing supports these findings.

Other evidence was presented to the effect that defendant Bruder was known as Doctor Bruder, although he was not a physician but at one time had held a license as a masseur; that in Mrs. Hunt's presence he said he could look into her eyes and tell what had happened during her life and could tell just when she was going to die. On one occasion he was interrupted in her apartment standing over her, looking into her eyes and saying he could tell her past and when she would die. At other times he said to her that he had many times gone into undertaking parlors and observed dead people and had later brought them back to life, and that some of them had intermarried and borne children. The trial court may well have questioned whether such conduct on the part of Bruder could be identified, as urged on this appeal, as ''simple acts of kindness and consideration shown to an elderly crippled woman'' which would be an adequate consideration for the transfer to him of property worth $35,000.

During his relationship with Mrs. Hunt defendant Bruder borrowed money from her and induced her to invest substantial sums of money in stocks of companies of which at times he was president—one a mining company and the other a marble mountain company for which Bruder said he worked testing rocks. At various times before she executed the deed Bruder told Mrs. Hunt that the people of Culver City did not like her and that that was why she could not rent the property; that it was a ''white elephant''—a liability—and that if she would deed the property to him he would make a show place of it and make her proud of it within a year. In November, 1934, a year after the deed here in dispute was executed, Mrs. Hunt's funds were used to pay the taxes on the property. Checks from tenants for rent were made payable to Mrs. Hunt as late as May, 1935. Prior to execu-

tion of the deed a joint bank account had been opened by Mrs. Hunt and Bruder, and she executed a power of attorney permitting him to endorse her name to checks. Bruder later drew out the money and deposited it in his own name. Even after the execution of the deed Mrs. Hunt referred to the property as "my Culver City property," and the insurance on the property remained in her name until April of 1935.

The evidence was sufficient to support the conclusion of the trial court that Bruder gained the confidence of Mrs. Hunt and persuaded her to part with the legal title to the property without a purpose or desire on her part to divest herself of ownership of this important portion of her estate. There is evidence indicating that due to statements made to her by Bruder she may have underestimated the value of the property at the time of the deed to him, and other evidence warranting the inference that he may have coerced as well as deceived her; but without undertaking to make an analysis of the mental, physical and emotional ingredients of the relationship between Bruder and Mrs. Hunt, it is sufficient to say that the evidence supports the finding of the trial court that Bruder took the property as a constructive trustee for Mrs. Hunt.

A constructive trust is imposed not because of the intention of the parties but because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. A constructive trust, unlike an express trust or resulting trust, is remedial in character. (Restatement, Trusts, vol. 2, p. 1249.) Where the owner of property transfers it, being induced by fraud, duress or undue influence of the transferee, the transferee holds the property upon a constructive trust for the transferor. A constructive trust arises where one person acquires title to property from another by an abuse of a fiduciary or confidential relation between them. (Restatement, Restitution, sec. 166.)

After the showing of the confidential relationship herein the burden was still upon the plaintiff to prove that the deed was not what it purported on its face to be; in other words, to prove that the transaction did not create a fee simple interest in the defendant Bruder but that the execution and delivery of the deed to him under all the facts surrounding or pertinent to the transaction constituted that

defendant a constructive trustee. To prove a trust by parol under a conveyance absolute in its terms the evidence must be clear, satisfactory and convincing. (*Taylor* v. *Bunnell*, 211 Cal. 601 [296 Pac. 288].) The sufficiency of the evidence for this purpose is a matter for determination by the trial court. (*Sherman* v. *Sandell*, 106 Cal. 373 [39 Pac. 797].)

■ The proceeding of February, 1935 (*Guardianship of Hunt*, 11 Cal. App. (2d) 21 [52 Pac. (2d) 533]), denied the petition for the appointment of a guardian of the person and estate of Mrs. Hunt, but it neither estops plaintiff from this proceeding nor constitutes this action *res adjudicata*. In the guardianship proceeding the trial court undertook to determine whether at that time Mrs. Hunt needed a guardian and not to test the legal effect of dealings between her and Bruder—the latter of course not being party to those proceedings. The rule set out in *Pratt* v. *Vaughan*, 2 Cal. App. (2d) 722 [38 Pac. (2d) 799], estopping parties from further litigation of issues in controvery concerning which there has been an adjudication docs not apply in a case where the parties and the issues are not the same and the controversy relates to a different subject matter.

■ The day after the trial judge in the guardianship proceeding held that Mrs. Hunt was not incompetent, defendant Bruder executed and delivered to defendant Coulter a deed to the property, claiming as consideration for the transfer the extinguishing by Coulter of a debt owed to her by Bruder in an amount of $25,000. A *lis pendens* covering the property had been filed in the guardianship case and constituted constructive notice to Coulter of an adverse claim of interest. It appeared that Coulter for many years had worked for not over $27 a week at seasonal employment and lived at an endowed home for working girls, for which she paid from $8 to $10 a week; that she worked in 1932 or 1933 for the S. E. R. A. and in 1934 or 1935 for the W. P. A., and had signed an application for aid in September, 1933, declaring she had nothing but property taxed at $5 per year. Yet she claimed to have loaned large sums in cash to Bruder over this period of years, taking promissory notes but no security and not paying any taxes thereon. After the deed to Coulter, in February, 1935, Bruder made several leases to tenants of the Culver City building, and in July of 1935 signed his name as owner on an application to the board

of equalization relating to that property. Checks for rent from tenants were made payable to Bruder as late as May, 1936.

At a date subsequent to the deed to Coulter a suit was brought by Security-First National Bank of Los Angeles against Bruder and Coulter (44 Cal. App. (2d) 767 [113 Pac. (2d) 3]) to subject the Culver City property to a judgment against Bruder for a deficiency after the foreclosure and sale under a mortgage of other property securing a note executed by him. Judgment was rendered for the bank, and in affirming the case the appellate court reviewed the foregoing and other evidence, which was also before the court in this case, and concluded that the stories of the two defendants, Bruder and Coulter, "indicate a community of dishonest enterprise" and that the conveyance was without consideration. The trial court in the instant case had evidence before it sufficient to support a conclusion adverse to defendant Coulter's separate defense of being a *bona fide* purchaser for value. "Everyone to whom property is transferred in violation of a trust, holds the same as an involuntary trustee under such trust, unless he purchased it in good faith and for a valuable consideration." (Civ. Code, sec. 2243.)

No other questions raised by appellants require discussion. Judgment affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied November 18, 1941, and appellants' petition for a hearing by the Supreme Court was denied December 18, 1941.